Lavery v. Barr, No. 1860244, and Mr. Curt Wright. Thank you, Your Honor. Are you an immigration lawyer? I am, Your Honor. Interesting. Okay. My name is Lance Curt Wright, and I represent Mr. Lavery. Your Honors, when Mr. Lavery accessed the electronic system of travel authorization to apply for entry to the United States, he did not knowingly and voluntarily waive his right to appear before an immigration judge. In fact, the record, even as recently supplemented, contains no waiver language at all. Well, on that form, it says, waived rights, answer why. Yes. That must mean something. Well, under the Visa Waiver Program, you do waive your rights. There's no question that that happened. The question before the court is whether that waiver was done knowingly and voluntarily. And this document says nothing to that. It doesn't have anything about what the language actually says. And as this court stated, the no – But doesn't that kind of completely undercut the Visa Waiver Program if everybody can just come in and check off, much like you do on anything, you check off yes, yes, no, no, yes, yes, and then you can say, well, now I want to have a trial on what I really meant by yes. I didn't really mean yes. I didn't really understand yes. I really hadn't had a lawyer explain yes to me. Then we've completely obliterated this whole electronic Visa Waiver Program that is intended to facilitate the short trips from Europe to America, much like we go to, you know, London for a week. We don't have to go through all these elaborate visa programs. And so we want to do something online and go. You're trying to completely undercut that with this argument. No, I'm not. All I'm saying is that there's going to be a waiver that needs to be done knowingly and voluntarily. But how are you going to prove that ever on an online form? You always have a form that says do you waive this or whatever. You check yes. That's the yes waivers. How are we going to know if that was knowing or voluntary or he was just – I mean, was it knowing or voluntary when he lied about whether he's ever overstayed a visa? Was it knowing and voluntary when he lied about whether he's ever committed fraud or misrepresented himself, which he's doing at this point? Is it voluntary when he said he never sought employment in the U.S., when he's been employed in the U.S. for some 40 years? Let me tackle your first question about how I would do it. I think the application was submitted already has the answer to that. All those questions you asked about on page three of that application, they said, have you ever done that? You said no. You could have just as easily said you waive your rights to immigration court proceeding. Do you understand that, yes or no? They didn't do that. Instead, what you have is this field that says waive rights and the letter Y. So Lavery's not a lawyer. It doesn't say explain what those rights were. Are you digging yourself a hole in terms of, you know, many forms like this have drop-downs. So is there a drop-down here that says that's something about waivers? I don't know, Your Honor. I haven't seen it. Yeah, it's fortuitous that you don't know. I guess counsel for the government can explain, but don't build your whole argument on what may turn out to be a false hypothesis. But what I'm trying to say is that in Noahs v. the Attorney General, the court said to determine whether a waiver was done knowingly or voluntarily, you have to review the clarity of the written waiver. This is not a written waiver. And, in fact, counsel in his letter said that in the letter undermined what I said was the real waiver. On page four of the administrative record, ICE said that Lavery executed the waiver on a form I-791. That's how ICE determined that there was a waiver. Counsel in his letter of last week said that it was highly unlikely that he ever filed a form I-791. Right, because that had been superseded by the online application. Right, but that's what ICE said. So there's a discrepancy now about what they relied upon. And remember, the court has to review the clarity of this waiver. There's not one before the court. Well, is there even a case before the court? Because before we get to that, we have to decide whether we have appellate jurisdiction. Yes, you do have appellate jurisdiction, Your Honor. This is a denial of a motion to reopen that was timely filed after the denial. The government claims otherwise, but there's clear – How is this timely? It was filed within 30 days of the denial of the motion to reopen. No, the appeal to us was, but how was the motion to reopen timely? Right. So under 1-8 CFR 103.5, there is a general provision of 30 days unless it cannot be controlled by the – or unless circumstances outside of the control of the applicant forbid it. In this case, ICE never served him this order of deportation. They served him with a warrant, and I know there's a debate about whether the order was in there. But he gets fingerprinted. He gets a warrant. It tells him that his greatest fear for the last 40 years is now coming true, and he just sits there by the television set for a year. I mean, this strikes me as very much putting him on notice that something is going on. And so I don't think he can just sit there and say, gee, I wonder why I had to get fingerprints. I wonder why I showed up and gave me a warrant. I wonder what I was signing a warrant for. When he's terrified to the point of lying to his wife for 35 years of the possibility of someday being deported. He's well aware of what was going on. Why did he wait a year? Well, a warrant is not an order of deportation. He did not know there was appeal clocks ticking on him at that point. He didn't actually have an order of deportation, which might have given him – He was arrested, wasn't he? He was. That would seem to spur you to a lawyer or a place or something. Maybe you don't know everything. I understand that. But if a random person with no education gets arrested, they realize that's a problem. And if they have the means and ability to go get a lawyer, they will. And your client clearly does because he has you. I didn't come along until much later. No, I know he didn't call you that day and you let him sit for a year. I'm not suggesting that. But he can't just sit there for a year. So in my view, regardless of whether he knowingly waived it and regardless of whether we would have jurisdiction over a motion to reopen, I don't think this motion to reopen is timely. I don't think you can just sit around for a year and wait. I think you should remand it to ICE to make them say that. What they said in their order of denial was simply they reviewed the record and found nothing that was wrong. Had they said it was untimely, we'd be having a different argument. But what they said is they reviewed the record, and they're not going to change it. So I think that means all issues are available, including the lack of a knowingly voluntary waiver. And remember, ICE's hands are not really clean here. They said it relied on a form I-791. That form doesn't exist. So it does – I don't really think unclean hands is what you want to be talking about given what your client has done. Lied to his own wife, and I realize that's the least of the legal issues in the case. I just meant to say that they were doing things that were irregular. So you say that section – the basis of your motion to reopen is that it was filed within 30 days of his being informed about the – what? The order – was it the – not the warrant, but the order, right? The denial of the motion to reopen. Well, no, I know that. Okay, there's – right. But, I mean, the motion to reopen was based on the letter that he received 30 – right before that. The motion to reopen is based upon – well, I probably would have denied all the objection letters that the government posted. Right. Okay. And that is – you're predicating that on this section 103.5? Right. What is your – I understand you have several arguments by why 103.5 allegedly applies here, but do you have a single case under the Visa Waiver Program that suggests that 103.5 is applicable? I don't, and I know that that is – could be seen as problematic, but I think that's because these things do not occur very frequently. I think what you have here is a very rare instance where, one, you had an order of deportation that was not timely filed. But just look at what the court would be ruling if they say that 103.5 is not a vehicle by which the labor could bring this argument. The record shows that he received a notice of intent to deportation on the same day that he got the order of deportation. He was never given an opportunity to reflect the allegations regarding his knowing involuntary waiver, and there was never any analysis on prejudice. So Mr. Lavery would have never been able to bring this case to ICE to show them that they maybe made an error, and secondarily, there would be no record for this court to review. How do you PFR the final position for review from that decision in March 2017? Well, you can have all the practical arguments you want to, but it's up to Congress and the Attorney General to pass a law that says that you have a visa waiver program and then to implement that with regulations, and what if 103.5? It seemed as somebody, I guess the government argued, taken in the whole context of the surrounding regulations, it applies to the denial of benefits, immigration benefits like asylum and that kind of thing, yes, and not to a situation where the petitioner has already waived his rights. Well, I don't think that they're right in that. They say that it only applies to USCIS benefits, but the regulations themselves in ACFR 1.1 say they apply to all DHS employees, which certainly includes employees in ICE, and if you look at the case of Escoto v. Napolitano as an Eighth Circuit case, and that's at 658 F. 3rd. 864, the government in that case argued that the petitioner in that case did not exhaust his administrative outlets because he didn't file a 103.5 motion to reopen. Now, that dealt with a different statute. It dealt with administrative deportation for aggravated felons, but it shows that the government in at least one circuit argued and had it accepted by the Eighth Circuit that that was a vehicle for filing a motion to reopen in areas outside of just benefits. And notably, Your Honors, the visa waiver program statute itself at 1187 does not have any prohibition on the filing of a motion to reopen. I think that's important because if you look at the reinstatement of removal provision at 8 U.S.C. 1231, Congress did say you couldn't reopen a case in that situation. So Congress knows how to preclude reopening when it desires to do so. Well, it didn't even think that there would be anything to reopen because anybody who filed the forms on the voluntary waiver program submitted himself or herself to automatic deportation without any further notice except for a claim of asylum. Well, Respectfully, I'm not sure they did know that. Why do they have to know that? I mean, you apply for a driver's license, and you have to know what the speed limit is in every jurisdiction? I don't know, but I do know that for a waiver to be done knowingly and voluntarily in this court's precedent, it does have to have some knowledge. And there's three factors that the court articulated, background and experience of the person, whether there's a waiver that is clear and precise, which is not here. Did we apply that to the visa waiver program, though? Yes, the military attorney general has a visa waiver program case. Well, that's fine, but even if we were to get to that, I would find that this fellow was doing everything that he did on this application knowingly and intelligently precisely because there's so many misstatements of fact here. I mean, the government approved him for the visa waiver program, which means that they thought he was complying with all of the provisions, right? There's an issue with that, Judge. But I think there's also a procedural issue the court needs to review, is that the government submitted multiple administrative records in this case, including portions of the ESTA application that Mr. Lavery submitted. They never submitted this document that had the waived rights field that counsel submitted last week. I think it's reasonable to infer the reason why they didn't do that is because they didn't rely upon it. They relied upon something called a Form I-791. That is no longer in existence. So I think even if you have what you're saying here, there's problems with Mr. Lavery's application, we may not matter anyway because that's not what ICE said. That's not why ICE ordered him deported. Rather, they said we executed a Form I-791. And does this fall under the rubric of we have to only adjudge matters that ICE has ruled on? Yes. So we can't defer to like we do with district courts where if it's supported by the record, we would have to remand if we wanted to go on the untimeliness issue? I think that's right. I mean you were relying on the NOS case on the waiver. I mean I knew that was a visa waiver, so I'm sorry for the prior question. But I guess I'm wondering in this context, what would be the – what is the practical physics of how you would have set this up? Well, I don't think that the problems with the structure are wrong. I think the implementation was wrong. I think once he was in their custody, they should have given him a notice of intent to deport and given him an opportunity to respond with that. I don't think that's here in this record that it was ever given that opportunity. So every person subject to the visa waiver program, before they can be given a notice of intent to deport, has to be given an opportunity to explain whether they've waived? No, that's part of the response. So if you are arrested for overstaying, they give you a notice about why they're going to deport you. And I would say important, different from our case, there's no waiver here. But they've given Mr. Lavery the actual written waiver and said, hey, you executed this. How do you respond? Ninety-five percent of the cases are going to be resolved on the fact that there was a waiver and you clearly understood it. There's no waiver here, which makes this case different from, I think, the bulk of the others. Okay. We have your argument and you have time to rebut. Thank you, Judge. Thank you. Thank you. Mr. Robbins. May it please the Court. Let me just ask you this, because this is a little bit off the direct topic, but is the problem here that his most recent admission was under the visa waiver program rather than if he had been arrested for speeding and then that's because sometimes people are here, overstay their visa, not under visa waiver program, as he did originally, the student visa. And then 20 years later they're arrested for speeding and it's discovered they're here and then they're put in removal process. But that's the full amped up IJ removal process. Correct. Here, because his most recent admission was under the visa waiver program, he's in this other world. That's right. So is it fair to say that had he not gone to Scotland but he'd been arrested for speeding and they'd looked him up and found out he'd overstayed his visa by some 40 years, then he would have had all of the whole IJ thing and raised whatever he wanted to raise, the discretionary this and that and the exceptional certificates and all that. I'm not making light of that. I'm just saying that whole world would have been available to him. That's correct. Okay. So is his knowing waiver different than the average person sitting there in Britain wanting to come here for a week of fun and then realizing they want to stay? No, it isn't. Because he's waiving a lot more than the average person is because he's been here and he has the U.S. citizen wife and a child and so on and so forth. Right. But I think it probably helps to explain a little bit about the ESTA application process and what exactly the waiver is. Under the regulations, if you look at what it says about ESTA, the design of ESTA is to collect the information that was previously on the paper forms. That's the I-994W and prior to that the I-791. I actually went on the ESTA online application to see how it worked. Each page of completing the application, it won't let you proceed to the next page until you've properly inputted the information on each page. So, for example, on the page that it requires you to put a passport number, if you don't put in the right passport number or an invalid number, it won't let you move on to the next page. It will stop and let you correct that area. The key page is the fourth page. It's a six-page application online. That fourth page is the page with all the different questions that the CBP officer will eventually vet to determine whether the person should be approved. Those are the questions that are in the record like, you know, are you a terrorist, have you ever overstayed an admission, other cases. And right beneath those questions, in big, bold letters, is waiver of rights. Well, why is that not in oral record? I mean, that's online. That's online on the online form. Well, shouldn't you print that out for us? I mean, we're here at oral argument in the Fifth Circuit, still arguing about what he entered on the computer. Well, see, when DHS keeps the records of what's going on, they print out exactly what I filed with the court last week regarding the information that was submitted on the online process. Okay, I understand, but if there's a drop-down box, don't you need to print that? It's not a drop-down box. Okay, don't you need to print what it is that I'm saying yes to? We don't believe so because we believe that the completed ESTA application form, which cannot be submitted without certifying the waiver, is entitled to the ultimate presumption of regularity because the computer will literally not allow you to submit the application without completing the form. But don't we need to know what he was saying yes to? That's what I'm saying. So I'm buying your notion that he had to have said yes to get to the next page, okay? But what did he say yes to? Because he's saying he didn't get it. He didn't know what he was saying yes to. So how do we know what he was saying yes to? I can tell you exactly what it says. I have it written down. It's not in the record. But that's what I'm saying. Why isn't it in the record? Why didn't you submit that? Is it something we can take judicial notice of because it's on a public record that's accessible? It's a little bit difficult because when I went on to the ESTA application website, you have to fill out information. So whatever you do, don't click submit because that would be essentially putting a false application in. So that's what I did. I entered Mr. Lavery's information in the application to get to the waiver to see what it says. And what it says is it basically tracks the language of the statute. And, in fact, the regulations provide that the ESTA is supposed to do exactly, collect the exact same information that the forms, the I-94W and the I-791 were supposed to collect. That's by regulation. What regulation? That's 217.4C, I believe it is. Let me just double check to make sure I have the exact one. Yeah, it's a – no, I'm sorry, 217.5 Section C. It says required elements, ESTA will collect such information as the Secretary deems necessary to issue a travel authorization as reflected by the I-94W non-immigrant alien arrival departure clause. Well, I still want to talk about jurisdiction, but what to – given the fact that the notice of intent to deport and the other orders suggested that Lavery had misrepresented something on an I-94 and an I-791, how do you explain the presumption of regularity? Well, the presumption of regularity that I was talking about was with respect to the ESTA online process. I understand that. So I definitely think there is an error in the notice of intent to remove that says that he executed the form by I-791. We don't have a record of it at I-791. Because there wasn't one. Yeah, it doesn't make sense. And the parties are not disputing here that he executed the waiver on the ESTA form. No, I understand. So you're saying that the government's statements – yes, but suppose he was presented with the notice of intent to deport and it says you misrepresented on the I-791. And he says what the heck is that? Well, this was actually covered in a case in one of your sister circuits, in the Fourth Circuit in Narday, where the same thing happened, where the notice of intent to remove indicated that it was an I-791, but the waiver of rights was actually executed through an I-94. And the Fourth Circuit said that it chose not to ascribe any significance to that because at the end of the day the waiver was executed and that was what mattered. And at the end of the day, that is what matters here. Tishner did execute a waiver of rights. And he doesn't dispute that he executed the waiver. He contends that it wasn't knowingly involuntary, but there's no dispute in the case that he did actually certify the waiver online. And, in fact, again – But he's disputing what it – I mean, his lawyer doesn't know what it was because he didn't do your thing of going online and pretending to be lavery and finding – and so we still don't have that language. And that still bothers me because if the notion is that the knowing involuntary is judged by what they were told, don't we need to know what they were told? No, Your Honor, and this is where the Seventh Circuit's decision in Bayo comes in because the notice factors that get into the issue of knowing involuntary is something the court doesn't have to reach. The court did reach it in notice because that came up in a different procedural posture. The court was looking at a summary judgment from a district court situation, and so it was reviewing de novo the summary factors that had been considered by the judge. So they did look at the knowing involuntary. But the Seventh Circuit actually dealt with this in a way that the government thinks is appropriate to deal with it, which is to jump directly straight to the prejudice inquiry because this knowing involuntary waiver is a due process argument, and you have to make a showing of prejudice in order to successfully – But didn't I address that with my very first question to you? I mean if he had known that by doing this he's going to end up not being able to get any immigration hearings should they discover that he lied to them in this form as he did previously, or at least he didn't leave when he was supposed to previously, he probably wouldn't have gone to Scotland. That's what he's saying anyway. And he would have then had both the chance that he's never caught, which is certainly possible, or that if he is, he at least gets the full IJ hearing and the ability to argue that he's been a good member of the community and his wife is a citizen and so on. Respectfully, I don't think the prejudice inquiry begins when he's in the United States. The prejudice inquiry begins when he needs to use the waiver, right? So he chose to leave the United States, and that's a risk that you run if you're here in our legal status. He would have filed the waiver application from his home in the U.S., wouldn't he, before he went abroad. He did do that in this case. That's what he claims he did. But that doesn't really make a difference because what matters is when he's coming in, did he get the waiver? And this is what the Seventh Circuit decision talks about. In fact, the Seventh Circuit had a similar situation. In that case, the applicant for or the person who was challenging the removal order said he spoke French and that he didn't understand the waiver because it was in English. Now, it's a little bit different than the facts here, but it's essentially the same in that both petitioners were arguing that they didn't understand the waiver. And the Seventh Circuit said, look, we don't need to get into the details of whether or not the person really understood the waiver because there's no prejudice. Either A, they did understand the waiver and they would be subject to the waiver of their rights, or B, they wouldn't have understood it and they would have been turned away at the border. And that's where the prejudice inquiry is because petitioners wouldn't have… If you are looking at this, he's already in Scotland. I agree there's no prejudice. He's not claiming asylum and all of that. But he's looking at it from when he filled out the form, which was here in the United States. When he's here and he's not been found for 40 years, nobody has come after him and probably never would have had he never left. And if they did, then he would have all of these IJ rights that might yield him the discretionary remaining in. I understand what you're saying, Your Honor, but from the government's view, the prejudice inquiry doesn't begin until he needs to use the waiver. So that doesn't happen until he's left the country. I would also point out that the prejudice… And what case is that? You've got BIO. Anybody else? We think BIO is the instructive case on it. And that BIO case also has the additional benefit of not getting into what Your Honor was discussing with my cousin. The visa waiver program is not supposed to advantage illegal aliens residing illegally in the United States. It's supposed to advantage aliens outside the United States who are seeking to come in. So if you say that someone in the U.S. gets a better leg up on the knowingness of his waiver, that flouts the purpose of the whole provision. That's exactly right. Now, what do you say about jurisdiction? You have a motion to dismiss. Absolutely. We think this case should be decided solely on jurisdiction and that the court shouldn't even get into all that we've just discussed right now. Here are the facts. The motion, the final order of removal was issued on March 22nd of 2017. As Your Honors have noted, he was on notice of that because he signed and fingerprinted the warrant of removal. And he was certainly on notice, sat around for 11 months, and did nothing. Now he claims that he didn't receive actual notice of the order and the notice of intent to remove until February 19th of 2018, about 11 months later. When he got it from his lawyer, which I don't understand how his lawyer has it if he didn't. That's not clear from the record. But I would note that even from that date, 11 months later, he didn't file within 30 days to this court. He didn't file a petition for review until August 6th. So that's 30 days even if you believe him that he didn't receive actual notice until that date. He's still not timely on the 30 days for that file. What he's trying to do is he's trying to manufacture jurisdiction through a principle that's commonly recognized in ordinary removal proceedings under 240. Under ordinary 240 proceedings, it's commonly recognized that when somebody files a motion to reopen or motion to reconsider, when the board makes a decision, that individual can file a petition for review on the denial of the motion to reopen or reconsider, with the caveat that it can't really attack the underlying order of removal. It can only attack the basis for denying the motion to reopen or motion to reconsider. But notably, in 240 proceedings, there's statutory and regulatory authority for filing those motions. In contrast, he's not in 240 proceedings. He's in VWP proceedings. Now, when you're talking about 240 proceedings, that's like for withholding of deputy rights. Right. Those are when you apply for asylum. Ordinary. I call them ordinary proceedings, but they're technically 240. But 240 is the statute. Yeah. INA 240. I think it's 1229 in the U.S. Right. That's fine. So what he's trying to do is he's trying to say – now, so he's in VWP proceedings, which are under 217 or 1187. And that does not provide for statutory authority for filing motions to reopen. To the contrary, it waives your rights for further review, further appeal, and to contest any action of removal. So what he's trying to do is he's combing the regulations, looking for some type of regulatory authority that allows him to file a motion to reopen. And what he's settled on is this Section 103.5. But as Judge Jones has already pointed out, that argument is easily rejected once you look at the actual regulations. In fact, if you look at the specific title of the regulations under 103, the title of the regulations are Immigration Benefits, Biometric Requirements, Availability of Records. So even just reading the title of the regulations, a lawn bell should be going off when your Honor says that this regulation isn't applicable to his case. But that's – is that – 103.5 is what people use in the – to reopen a 240, right? Well, it's used to reopen a denial of application of benefits. So it can be for administrative orders of removal, but it's when an individual is affirmatively applying for benefits. Just to sort of illustrate the inapplicability. Like a change in status or something. Exactly. So if somebody files for – that's exactly right – or some sort of immigration benefit with CIS. There's a whole host of them, you know, certain visas, et cetera. But if you look at the regulations all together and you just go through them until you get to 105. 103.2 is the first regulation. It's titled Submission and Adjudication of Benefit Requests. The next regulation deals with denials, appeals of applications or – Let me ask you this. Because I asked – Let him continue because I don't think he's through on that. The next regulation is Denials and Applications for Applications Filed under 103.2. Again, benefit requests. And when you get to the Motion to Reopen regulation, it talks about the motion being applied by the affected party. The affected party is the person who is denied benefit requests. Petitioner is not applying for a benefit. He's trying to challenge the VWP order of removal. So my question is whether we even need to get to this. That's why I interrupted you because I'm not sure we need to get to this because I'm not sure the Motion to Reopen was itself timely. And while your counsel opposite makes the argument that we can't rely on something ICE didn't rely on, if that would affect our jurisdiction, then I think we can assess it. So that's my question. If we assume arguendo the Motion to Reopen was untimely, then does that affect our jurisdiction to consider it, even assuming we would normally have jurisdiction on a Motion to Reopen? I don't think so. To me, I think the jurisdictional inquiry should start with whether the petition for review is timely filed, and the next step in the analysis is would have to be, well, since he didn't file within 30 days of the final orders of removal, whether actual or constructive notice, the question then becomes, does the denial of his, quote-unquote, Motion to Reopen – I haven't talked about that yet. I'll get to it. But does the denial of that document constitute a final order of removal that he has a new 30-day clock to start from? And in order to analyze that, you would have to look to see if there's any statutory or regulatory authority for filing a Motion to Reopen because you can't just label a document a Motion to Reopen, file it with the agency, the agency says this isn't a thing that you're filing, here's your money back, and say that that somehow bestows jurisdiction upon this court. There has to be some sort of regulation or statute that gives the court that jurisdiction. So the timeliness of the Motion to Reopen is irrelevant to our jurisdiction. No, and I would agree with Petitioner's counsel that the agency did not deny it on the basis of untimeliness. They said what you're doing here isn't permissible. He filed an I-290 application with his, quote-unquote, Motion to Reopen. That application, he had to leave the whole thing blank because it doesn't really apply to what he was trying to do. Well, now he says that was – he clearly stated it was a Motion to Reopen. He stated it was a Motion to Reopen, but just labeling something doesn't make that it. A Motion to Reopen is something you file when you have something new or if there's been a change in circumstances. In substance, what he was asking was – The original relief. Exactly. He was challenging the VWP over and asking for the court to send it to 240 proceedings, which is exactly what the statute prohibits. So what he's trying to do is use an inapplicable regulation to countermand a directly applicable statute. Okay, let me ask you this. What if, in fact, there was some evidence of some glitch in the computer? I'm not saying this is this case. I'm just making one up. So that the waiver language wasn't there and it just clicked a yes without you ever having seen it, and there's some evidence of that. Let's suppose that. And now we have the same proceedings we have here. How would he raise that? What would be the mechanism for him to say, oh, my gosh, I found out. The reason I didn't know about this waiver is because there was this glitch, so I don't think I did sign the waiver despite all this stuff about the pages and the ETSA and all that. How could he bring that? Where would he have to go to do that? Well, I think under the law he'd have to appeal to this court. This court has considered the knowing involuntary factors in the knows case. But it's not something that we can test. So he would have to, within 30 days of the warrant and all that, he would need to have filed something. And then how would we be able to, let's say you all deny the glitch. He has some evidence of a glitch. Where would we send it to find the facts? Because we don't find facts. Well, I mean, to be honest, I'm not exactly sure because I've never seen it happen. But I'm not sure what the remedy would be. I guess it would require some sort of fact-finding, but the field officers aren't going to be in a position to make findings of fact. So, I mean, I don't know if it would go to 240 proceedings or if it's something that the court would have to look at essentially as it did in knows when it was essentially looking at the factors. I honestly don't know the answer to that. He says that in the Escoto case, the circuit court allowed a motion to reopen under 103.5, I think. It did. A couple of things about that case. First of all, that case has been heavily criticized by the Tenth Circuit specifically for the reason that the Tenth Circuit said that when we look at the language of the motion, it applies to immigration benefits. Well, what was the Tenth Circuit opinion? I mean, Escoto was not the Tenth Circuit opinion. No, that was the Eighth Circuit. So that has been subject to heavy criticism from one of the sister circuits. I would also point out that that was not a visa waiver case. That was an expedited removal case. I don't know exactly what was argued in that case, but it's possible that there may have been available benefits that might have made the regulation applicable because in expedited removal, potentially you might be able to apply for benefits. It's not like with the visa waiver program where you have the inability to apply for benefits. I see. So I don't know exactly if the government – I find it surprising that the government would argue that 103.5 would apply in expedited removal, but at the end of the day, I don't know the details of the arguments in that case that I would be able to speak on. But I can say that another court has criticized that for exactly the same reason as I've talked about here, that the regulations apply to benefit requests and not to other forms of benefits. I have a quick question. It knows we found the waiver was knowing and voluntary. Have we ever found a visa waiver not to be knowing and voluntary? Not to my knowledge. There's very few cases. In all the circuits, there's only a handful of cases. I think there might be one or two, but not this one. I mean in our circuit. Okay. Okay. Thank you very much. Thank you very much for your time. Mr. Cartwright. Your Honor, in the motion to reopen that we filed to ICE, we made the allegation that you could file a motion to reopen under 103.5, and we specifically gave some examples of when CBP did the same thing, Customs and Border Protection. So that underlies our argument that you can file a motion to reopen under CFR 103.5 in cases that don't relate to benefits. In fact, CBP has done so on many occasions in expedited removal proceedings. So I think you do have jurisdiction, and I think it's important when you talk about regulatory motions, Your Honor, that you remember this regulation has never been before the court as far as jurisdictional arguments go. And it's different from a sui sponte motion to reopen from the board in that the board regulation is dealing with a person who's first gone before an immigration judge, had an appeal to the Board of Immigration Appeals, and had a statutory right to a motion to reopen. Here, you're dealing with an individual who had none of those. He was never given the right to respond. He was never given the ability on this record to say what happened when he executed that waiver. Well, I mean, frankly, you're calling this a motion to reopen, but it's really a motion for a declaration for an inquiry in the first instance. You're not trying to reopen anything except the merits. Well, I'm trying to reopen it because I don't think that the waiver, the knowing and voluntary lack of knowing and voluntary, was ever before ICE. It was never there. So it is a new fact that they haven't considered previously. So I think it does fall under that regulation. Well, as far as, you know, maybe the Supreme Court would find a due process violation here, but it seems to me that the whole nature of this program is to say that, to presume that the people who are getting these waivers know what they're doing and that they're subject to immediate removal. Well, there's no doubt that there's a waiver aspect to ESTA. The problem here is this court's precedent, where it says that in order for it to be knowingly and voluntarily, you have to review the clarity of the written agreement. It's just not here. So you look at those factors. So if he went and printed out that page we were just talking about, would that end the matter? It would certainly gain some light on this. I'll tell you this. It's weird that we're in an oral argument and we don't still know what he was clicking yes to. I find that very frustrating. Your Honor, I called them when I first started this argument, and I said, do you have the waiver? Please send me the waiver because I was going to confront my client. They did not give me the waiver. I filed a motion to reopen. I didn't know at that point whether they had submitted the waiver at that point. Nothing came forth. So I filed my PFR, administrative record. Didn't have a waiver. It wasn't until you specifically ordered them to produce this waiver that you got what was not the waiver. So I don't know what more counsel for someone in this situation can do but bring the motion to reopen that was brought. There was nowhere else to bring this issue. And it's constitutional dimension. He had a constitutional right to hear the court of revolutions. No, he didn't have a constitutional right to come in, as I understand it, unless he agreed to waive procedures going out. Isn't that right? He had no constitutional right to be in the United States today. And if he were an alien in England today who wanted to come visit the United States, he would not be allowed in unless he either had a regular visa or went through this program, right? Well, I think that it takes its bearing from where he was when he executed the waiver. There's no dispute that he was in his home when he did that. But isn't that contrary to the purpose of the waiver? I mean the visa waiver program is not intended for people that are in the U.S. and go on a trip to Scotland. It's meant for people in Scotland who want to go on a trip to the U.S. I think that's generally right. I'm not sure there's a prohibition for someone who's here on an ESTA visa already to reapply in the United States, for example. I just don't know the answer to that. But I'm not sure there's a blanket withdrawal. I'm guessing you can't get more than 90 days without doing the full visa. 90 days is it. But I think it's good for like 10 years and you can renew it for 90 days each time you come back in. But, again, the issue here is whether he knowingly or voluntarily waived it. There's no record on that. And it knows – this court said that – I actually think that it is different. I mean if he was in Scotland and just wanted to come visit the U.S., he would have been happily waiving whatever because, you know, you're not trying to stay. I mean when I go visit Europe, I'm not trying to stay there more than the week or two that I'm on my trip. So I don't care about any of this stuff. The problem that you have is what he's really waiving is staying in the United States all those 40 years and having whatever rights he might have had to bring whatever proceedings or to respond to proceedings brought against him with better arguments than he now has. That's really your argument, and that's really not part of the visa waiver program. Well, the waiver is, and it wasn't knowingly or voluntarily done. I just conclude by saying every presumption is supposed to be against the waiver, according to your case of notice, Attorney General. Sir, is Mr. Lavery still in detention? No, Your Honor. He's out on bond or what? No, Your Honor, he was deported. Oh, he was deported. He was deported. Okay. So that's not our business. I'm sorry about those facts. Was he ever indicted? Yes. But what happened to that? Yeah, convicted of a false claim to a federal officer. So he served his term and then he was deported?  Okay. All right. Thank you very much. Thank you, Your Honor. I'm sorry about these facts. They're sad facts regardless of what the law comes out to be. Have a good day.